**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2020AP964**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018TP181

**IN COURT OF APPEALS**
**DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.M., A PERSON UNDER THE AGE OF 18: STATE V. J.M.W.:

N.M.,

APPELLANT,

V.

STATE OF WISCONSIN,

RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

¶1    WHITE, J.[1]  N.M. appeals the circuit court's order terminating the parental rights of her mother, J.M.W., on the petition of the Milwaukee County Department of Human Services.  She asks this court to vacate the order and remand to the circuit court.  She argues that the circuit court erroneously exercised its discretion because, under the facts in the record, no reasonable court could have concluded that termination of parental rights was in the best interests of the child.  For the reasons stated below, we conclude that termination was not an erroneous exercise of discretion, and accordingly, we affirm.[2]

## BACKGROUND

¶2    J.M.W. is the biological mother of N.M.  In August 2017, the Division of Milwaukee Child Protective Services took N.M. into temporary physical custody because J.M.W. exposed N.M. to domestic violence and J.M.W.'s conduct was negatively impacted by alcohol use.  On August 2, 2018, the State filed a petition to terminate J.M.W.'s parental rights to N.M. because N.M. remained in continuing need for protection or services (continuing CHIPS).

¶3    J.M.W. pleaded no contest on the issue of whether grounds existed for the termination of her parental rights.  The trial court made a finding of J.M.W.'s

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Pursuant to WIS. STAT. RULE 809.107(6)(e), this court is required to issue a decision within thirty days after the filing of the reply brief. We may extend the deadline pursuant to WIS. STAT. RULE 809.82(2)(e) upon our own motion or for good cause. *See Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995).  On our own motion, we now extend the decisional deadline through the date of this decision.

[2] J.M.W. filed a separate appeal challenging the termination of her parental rights.  That appeal in case number 2020AP1057 is also assigned to this court and will be addressed in a separate decision.

parental unfitness after the State established the elements of the CHIPS claim.[3] The trial court entered an order for the appointment of adversary counsel for N.M. because she still expressed a desire to return to her mother and her wishes conflicted with the recommendation of the GAL.

¶4 At the dispositional hearing on January 24, 2020, the circuit court reviewed the six statutory factors in WIS. STAT. § 48.426, which the court must consider in determining N.M.'s best interests with regards to terminating J.M.W.'s parental rights.[4]

¶5 For the first factor, the likelihood of adoption, the circuit court considered it highly likely that the current foster parents would adopt N.M. if she

---

[3] This case transferred from the Honorable Christopher R. Foley to the Honorable Mark Sanders during a judicial rotation in August 2019. For ease of reading, Judge Foley will be referred to as the trial court and Judge Sanders as the circuit court.

[4] When the court considers the best interests of the child in the disposition of a TPR action, it considers, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

were available to adopt. In the general sense of adoptability, N.M. was only less adoptable because of her age. The circuit court considered this factor to support termination.

¶6     The second factor is the age and health of the child at the time of this disposition; the circuit court indicated that N.M. is eleven years old and healthy. The circuit court considered this factor to be neutral on the issue of termination.

¶7     The circuit court stated that for the third factor, N.M. had a substantial relationship with her mother, which stemmed from N.M.'s over eight years in J.M.W.'s care, J.M.W.'s seventy-eight percent visit attendance rate, and the efforts of the foster family to maintain the mother-child relationship. The relationship between N.M. and J.M.W. was evolving because J.M.W.'s visits and phone calls to N.M. have decreased over time. It was obvious to everyone in the courtroom that it would be harmful to N.M. to sever the legal relationship with J.M.W., but some of the harm could be mitigated by ongoing contact after the TPR. Some of the harm that N.M. would experience was because she did not have an accurate picture of how J.M.W.'s alcohol use and the State's safety concerns prevent her return. The circuit court considered this factor to weigh against termination.

¶8     The fourth factor is N.M.'s wishes. The circuit court stated that it is clear that N.M. wants to be with J.M.W. The weight of this factor increases with age. It is valuable for N.M. to feel that her wishes have been understood, but no factor is absolute. The circuit court considered this factor to weigh against termination.

¶9     The fifth factor is the duration of separation between N.M. and J.M.W., which is two years, four months, and twenty-five days, which amounts to

twenty-one percent of her life. The circuit court considered this factor to be generally neutral, although decreasing contact in the last year supported termination.

¶10 The sixth factor is whether N.M. would be able to enter into a more stable and permanent family relationship through termination. Because of the current foster mother's education in social work and personal experience working with kids after foster care, the circuit court thought there was a very good likelihood of success. The circuit court stated there was a low likelihood that N.M. could be returned to J.M.W.'s care in the future based on her alcohol issues and housing stability.

¶11 The circuit court stated that the ultimate question it had to answer was whether granting the TPR allowed N.M. to enter into a more stable and permanent family relationship compared to the alternatives. First, the court did not think a return to J.M.W. was possible at that time. Second, a guardianship was proposed, which had the advantage of continuing a legal relationship between N.M. and J.M.W., but also had the disadvantage of less stability and permanence. The third option was TPR, with probable adoption by the current foster family. The advantages were stability, an ability to make decisions for N.M., and control over visitation if J.M.W.'s alcohol use became a problem. The disadvantages were that N.M. did not want it and N.M would not feel that her voice was heard.

¶12 The circuit court acknowledged the tension between the factors, but decided that the "likelihood of adoption, the stability and duration of separation tend to weigh in favor of termination, and the harm that [N.M.] will suffer is balanced and her wishes are balanced against that." Although the balance was close, the greater degree of stability offered by the foster parents and probable adoption weighed in favor of termination sufficiently that the circuit court found that

termination of J.M.W.'s parental rights was in the best interest of N.M.  N.M. appeals.

## DISCUSSION

¶13    N.M. argues that the circuit court erroneously exercised its discretion in concluding that termination was in N.M.'s best interests.  She argues that termination of parental rights should be reserved for cases that clearly command that outcome, not cases that mildly allow for it.  She argues that the facts of the case could only lead to the contrary conclusion to not terminate J.M.W.'s parental rights to N.M.

¶14    Whether the termination of parental rights is in the best interests of the child is a discretionary decision by the circuit court.  *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996).  We will not overturn a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2).  A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane Cty. DHS v. Mabel K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶15    In essence, N.M.'s argument asks us to weigh the facts differently than the circuit court did.  She argues that it was not in her best interests to terminate J.M.W.'s parental rights because of the substantial, loving relationship between J.M.W. and N.M. and N.M.'s unwavering wish to return to her mother.  Both issues were undisputed.  The Agency case manager testified that severing the legal relationship would have a tremendous impact on N.M.; therefore, N.M. asserts that the harm N.M. would suffer argued against termination.  N.M. argues that because

of her increasing age, her adoptability chances are low if this adoptive resource falls through. She argues these facts cumulatively can only reasonably be interpreted to find that termination was not in N.M.'s best interests. N.M. provides no legal support for her final argument that termination of parental rights should be reserved only for cases that clearly command it.

¶16 The determination of whether termination of parental rights is in the best interests of the child is governed by the statutory process in chapter 48 and the factors under WIS. STAT. § 48.426(3). "The decision whether to terminate a parent's rights to a child can be one of the most wrenching and agonizing in the law." *Sheboygan Cty DHS v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402. The court is not required to afford greater weight to any particular factor in § 48.426. *State v. Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475. We defer to the circuit court as to the weight of each factor when the court properly examined each factor on the record. *Julie A.B.*, 255 Wis. 2d 170, ¶30. Here, the record shows that the circuit court examined each factor and considered the best interests of N.M. when it terminated J.M.W.'s parental rights.

¶17 N.M. acknowledges that the circuit court reviewed the six factors in WIS. STAT. § 48.426 on the record, but she argues that the cumulative facts only lead to the conclusion that termination was not in N.M.'s best interest. The record shows the tension in the factors that the circuit court acknowledged, but it is our task to search for evidence to support the circuit court findings, "not for evidence to support findings the [circuit] court could have reached but did not." *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. This is a difficult case, but there were sufficient facts to support the circuit court's findings.

¶18 N.M. does not challenge the circuit court's individual findings. She instead argues that a reasonable court would have reached a different conclusion about the cumulative weight of the facts in the record. Whether another court would have weighed the factors in the same manner or reached the same conclusion is not the question before us. The circuit court was fully within its discretion to decide that termination was in N.M.'s best interests because it examined the relevant facts, applied the proper standard of law, and demonstrated a rational process. The circuit court reached a conclusion a reasonable court could have made. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion and we affirm.

¶19 For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(4).